IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE, a Washington non-profit corporation; ERIN PATTERSON, an individual; GABRIEL BISER, an individual; and JAMES WELCH, an individual,<br><br>**Plaintiffs**,<br><br>v.<br><br>WAYNE NABORS, in his official capacity as County Clerk of Putnam County, Tennessee; LISA DUKE CROWELL, in her official capacity as County Clerk of Rutherford County, Tennessee; WILLIAM K. KNOWLES, in his official capacity as County Clerk of Hamilton County, Tennessee; ELAINE ANDERSON, in her official capacity as County Clerk of Williamson County, Tennessee; and HERBERT H. SLATERY III, in his official capacity as Attorney General of the State of Tennessee,<br><br>**Defendants**. | Case No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Introduction**

1. This is an action for declaratory and injunctive relief, pursuant to 42 U.S.C. § 1983, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Tennessee Constitution, to invalidate and enjoin enforcement of certain provisions of Tennessee Code Annotated § 36-3-301, as amended by Tennessee 2019 Public Chapter 415, which violate the constitutional rights of Universal Life Church Monastery Storehouse ("ULC Monastery" or "the Church"), its ministers, and persons who wish to have their marriages solemnized by the Church's ministers.

2. ULC Monastery is a non-denominational religious organization that champions religious freedom, social justice, and spiritual expression of all kinds. To further its mission, ULC Monastery ordains those who feel called to be a minister of the Church, and many who receive ordination choose to minister by officiating weddings.

3. Section 36-3-301, as amended by Public Chapter 415, authorizes religious leaders to solemnize marriages in Tennessee, but only for favored religions that appoint their ministers in a manner the State deems acceptable. The statute discriminates against ULC Monastery ministers by design and restricts their protected speech without justification. As a result, Section 36-3-301, as amended by 2019 Public Chapter 415, unconstitutionally grants a preference to certain religions, burdens ULC Monastery's and its members' free exercise of religion, and violates the Church's and its ministers' freedom of speech.

## Parties

4. ULC Monastery is a non-denominational religious organization and a Washington non-profit corporation, with its headquarters in Seattle.

5. Rev. Erin Patterson is an individual who resides in Rutherford County, Tennessee.

6. Rev. Gabriel Biser is an individual who resides in Hamilton County, Tennessee.

7. Rev. James Welch is an individual who resides in Putnam County, Tennessee.

8. Wayne Nabors is the duly elected and serving County Clerk of Putnam County, Tennessee, and is sued in his official capacity.

9. Lisa Duke Crowell is the duly elected and serving County Clerk of Rutherford County, Tennessee, and is sued in her official capacity.

10. William K. Knowles is the duly elected and serving County Clerk of Hamilton County, Tennessee, and is sued in his official capacity.

11. Elaine Anderson is the duly elected and serving County Clerk of Williamson County, Tennessee, and is sued in her official capacity.

12. Herbert H. Slatery III is Attorney General of the State of Tennessee and is sued in his official capacity.

## Jurisdiction and Venue

13. This action arises under the United States Constitution as well as the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988.

14. This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

15. The Court has supplemental jurisdiction over the state constitutional claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because events giving rise to the claims occurred within this District and at least one defendant resides within this District.

## Factual Allegations

### ULC Monastery's Ministry and Outreach

17. ULC Monastery is a non-denominational church formed to advance religious faith and freedom with the following core tenets: (1) a person should always strive to do that which is right, and (2) all people are naturally endowed with the rights to practice their beliefs, regardless of what those beliefs are, as long as they do not infringe the rights of others and are within the law.

3
Case 2:19-cv-00049   Document 1   Filed 06/21/19   Page 3 of 19 PageID #: 3

18. ULC Monastery registered as a Washington non-profit corporation in 2006 and is headquartered in Seattle. ULC Monastery is a tax-exempt religious organization under 26 U.S.C. § 501(c)(3).

19. ULC Monastery's ministry includes support of charitable organizations, advocacy for marriage equality, and other social justice causes. The Church publishes a blog, which includes sermons written by ULC Monastery ministers, and where many commenters participate in discussions of religion, spirituality, and social justice.

20. ULC Monastery embraces the principle that those who feel so called can become ministers through the Church. ULC Monastery ordains ministers over the internet for free, and it sends credentials to ministers by mail. ULC Monastery expects its ministers to conduct themselves according to the Church's two core tenets, but ULC Monastery rejects the idea that a church's members should be made to obey the commands of any central leadership structure and embraces the equality of all individuals.

21. Through its website, ULC Monastery offers its ministers resources such as training and assistance in how to officiate weddings, deliver sermons, or found a church. ULC Monastery also maintains a private social network online where its ministers can connect. ULC Monastery strives to fulfill the spiritual needs of its global network of members and ministers offering a wealth of information, a variety of services, and networking opportunities. The Church views this communion and fellowship of its many scattered ministers as just as valid a form of worship as the weekly services held in some of the world's more traditional religious institutions.

## Tennessee Ordination Statute

22. Tennessee regulates by statute who may solemnize marriages recognized by law. Specifically, Section 36-3-301(a) of the Tennessee Code, as amended by 2019 Public Chapter 415 (with amendments underlined), provides:

> (1) All regular ministers, preachers, pastors, priests, rabbis and other spiritual leaders of every religious belief, more than eighteen (18) years of age, having the care of souls, and all members of the county legislative bodies, county mayors, judges, chancellors, former chancellors and former judges of this state, former county executives or county mayors of this state, former members of quarterly county courts or county commissions, the governor, the speaker of the senate and former speakers of the senate, the speaker of the house of representatives and former speakers of the house of representatives . . . and the mayor of any municipality in the state may solemnize the rite of matrimony. . . .
>
> (2) In order to solemnize the rite of matrimony, any such minister, preacher, pastor, priest, rabbi or other spiritual leader must be ordained or otherwise designated in conformity with the customs of a church, temple or other religious group or organization; and such customs must provide for such ordination or designation by a considered, deliberate, and responsible act. <u>Persons receiving online ordinations may not solemnize the rite of matrimony.</u>

(Emphasis added). Thus, 2019 Public Chapter 415 added the last sentence of Section 36-3-301(a)(2) prohibiting "[p]ersons receiving online ordinations" from "solemniz[ing] the rite of matrimony."

23. 2019 Public Chapter 415 will take effect July 1, 2019.

24. While the statute purports to authorize ministers of "every religious belief" to perform marriages, the Tennessee legislature has twice acted to exclude disfavored religious groups. First, in 1998, the legislature added language to exclude those whose religious customs do not provide for ordination "by a considered, deliberate, and responsible act." The legislature acknowledged the intent of the statutory amendment was to target "the mail-order preachers," while allowing only ministers of more traditional religious groups to perform weddings. Second,

5

through its enactment of 2019 Public Chapter 415, the legislature acted to expressly prohibit ministers "receiving online ordinations" from solemnizing a marriage.

25. Ministers who violate the statute face the threat of criminal liability. Tennessee law requires that a person who solemnizes a marriage endorse the marriage license and return it to the county clerk within three days, and a minister who "fails to make such return of the licenses commits a Class C misdemeanor." Tenn. Code Ann. § 36-3-303(a). Further, a person who "[k]nowingly make[s] a false entry in . . . a government record"—such as potentially by returning a marriage license the ministers knows is invalid—commits a Class A misdemeanor. Tenn. Code Ann. § 39-16-504(a)(1).

26. Ministers of ULC Monastery who wish to perform weddings in Tennessee also face discrimination and the threat that marriages they solemnize will be invalidated.

27. The result of the 1998 change to Section 36-3-301(a) and 2019 Public Chapter 415 is to draw a line between favored and disfavored religious groups. Favored religious groups include traditional evangelical Christianity and Catholicism. Disfavored religious groups include ULC Monastery and Islam, which Tennessee courts have recognized allows anyone with the requisite knowledge of Islamic law to perform marriage ceremonies regardless of any official status or "considered, deliberate, and responsible act." *See Aghili v. Saadatnejadi*, 958 S.W.2d 784 (Tenn. Ct. App. 1997).

28. The result of 2019 Public Chapter 415 is also to restrict the ability of ULC Monastery and its ministers to exchange essential communications—those related to ordination—via the most ubiquitous and convenient medium.

### Rev. Erin Patterson

29. Rev. Erin Patterson was ordained as a ULC Monastery minister in 2015.

30. Rev. Patterson was drawn to ULC Monastery because she shares its core belief that we are all children of the same universe. Rev. Patterson observed that many who shared similar beliefs and did not belong to a brick-and-mortar church had trouble finding suitable marriage officiants.

31. Rev. Patterson has solemnized five marriages as a ULC Monastery minister and performed one vow renewal ceremony, all in Tennessee. She performs inclusive ceremonies structured to accommodate the spiritual beliefs of couples and their families.

32. Rev. Patterson agreed to perform a marriage for a couple who resides in Williamson County, Tennessee, on October 5, 2019. She arranged to meet with the bride June 9, 2019, to plan for the ceremony. However, after learning of 2019 Public Chapter 415, Rev. Patterson cancelled the meeting and told the couple she could not perform the marriage. Another couple requested that Rev. Patterson perform their marriage on October 13, 2019, in the Nashville area, but Rev. Patterson again declined based on her concerns about 2019 Public Chapter 415.

33. Rev. Patterson resides in Rutherford County, Tennessee. She has performed multiple weddings in Rutherford County and plans to perform more. Prior to the enactment of 2019 Public Chapter 415, she had begun coordinating with local zoning authorities to make changes to her approximately eight-acre property that would allow her to host weddings. 2019 Public Chapter 415 has caused Rev. Patterson to halt these plans.

### Rev. Gabriel Biser

34. Rev. Gabriel Biser was ordained as a ULC Monastery minister in 2015.

35. Rev. Biser has solemnized four marriages as a ULC Monastery minister in Tennessee. Two of the marriages Rev. Biser performed were for same-sex couples, and one was for a man and woman who had both been divorced.

36. Rev. Biser embraces ULC Monastery's values of equality and acceptance, and he views ministry through solemnization of weddings as a personal calling. He performs weddings for couples who struggle to find compatible ministers of other churches willing to perform their weddings. He offers his services and ministers to those who do not feel accepted by most Christian churches or by their state and local governments, whose officials are the only non-religious persons authorized by law to perform marriages.

37. A same-sex couple recently asked Rev. Biser to perform their marriage in Hamilton County, Tennessee, scheduled for August 2019. Rev. Biser agreed, but canceled after learning of 2019 Public Chapter 415.

38. Rev. Biser resides in Hamilton County and intends to solemnize weddings there in the future.

### Rev. James Welch

39. Rev. James Welch was ordained as a ULC Monastery minister in 2018.

40. Rev. Welch has solemnized four marriages as a ULC Monastery minister in Tennessee. As a minister, Rev. Welch furthers ULC Monastery's values of acceptance and openness, including by performing marriages for couples with varied spiritual or religious backgrounds.

41. Rev. Welch has agreed to solemnize a wedding on July 6, 2019, for a couple who resides in Putnam County, Tennessee. The approaching effective date of 2019 Public Chapter 415 has forced the couple to begin making alternative arrangements.

42. Rev. Welch resides in Putnam County and intends to solemnize weddings there in the future.

## COUNT I

## Violation of the Establishment Clause of the U.S. Constitution

43. Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs, as if fully set forth herein.

44. The First Amendment—as incorporated and applied to the states through the Fourteenth Amendment—provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I.

45. The "clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).

46. Section 36-3-301, as amended by 2019 Public Chapter 415, prefers certain religions or religious denominations over others on its face by (a) authorizing marriage solemnization only by leaders whose religion or denomination includes "customs" that provide for ordination "by a considered, deliberate, and responsible act;" and (b) prohibiting those who receive "online ordinations" from solemnizing marriages while granting that benefit to ministers of religions who obtain ordinations in any other manner.

47. No compelling governmental interest supports this discrimination against certain religions.

48. Section 36-3-301, as amended by 2019 Public Chapter 415, further contravenes the Establishment Clause because it serves no secular purpose, lacks a primary effect other than

to advance or inhibit religion, and fosters an excessive government entanglement with religion. *See Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971).

49. This violation of the Establishment Clause of the U.S. Constitution is actionable as a violation of 42 U.S.C. § 1983, entitling Plaintiffs to declaratory and injunctive relief, as well as damages, costs, and attorneys' fees as provided by 42 U.S.C. § 1988.

## COUNT II

### Violation of the Equal Protection Clause of the U.S. Constitution

50. Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs, as if fully set forth herein.

51. The Equal Protection Clause of the Fourteenth Amendment provides that states may not "deny any person within [their] jurisdiction equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause protects against invidious discrimination against similarly situated individuals or implicating fundamental rights, such as religion.

52. Section 36-3-301, as amended by 2019 Public Chapter 415, give the right to officiate weddings to ministers ordained by various religious groups but denies that right to ULC Monastery and its ministers.

53. Section 36-3-301, as amended by 2019 Public Chapter 415, reflects the state legislature's intentional and purposeful discrimination against religious groups or persons who are not members of an established "church, temple or other religious group or organization" or part of a religious organization that ordains ministers in the legislature's preferred manner, in violation of Plaintiffs' rights under the Fourteenth Amendment.

54. This violation of the Fourteenth Amendment to the U.S. Constitution is actionable as a violation of 42 U.S.C. § 1983, entitling Plaintiffs to declaratory and injunctive relief, as well as damages, costs, and attorneys' fees as provided by 42 U.S.C. § 1988.

## COUNT III

### Violation of the Free Exercise Clause of the U.S. Constitution

55. Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs, as if fully set forth herein.

56. The First Amendment—as incorporated and applied to the states through the Fourteenth Amendment—provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I.

57. Many of ULC Monastery's ministers choose to minister by solemnizing marriages, and Section 36-3-301, as amended by 2019 Public Chapter 415, burdens ULC Monastery's and its members' free exercise of religion by depriving them of the right to do so. The restrictions imposed by Section 36-3-301, as amended by 2019 Public Chapter 415, on who may solemnize marriages are arbitrary and not supported by any rational basis.

58. Section 36-3-301, as amended by 2019 Public Chapter 415, is not neutral and not of general application because the statute's purpose is to confer a benefit on certain religious groups and not others. As a result, Section 36-3-301, as amended by 2019 Public Chapter 415, is subject to the most rigorous of scrutiny. The burden imposed by the statute is not supported by any compelling governmental interest.

59. This violation of the Free Exercise Clause to the U.S. Constitution is actionable as a violation of 42 U.S.C. § 1983, entitling Plaintiffs to declaratory and injunctive relief, as well as damages, costs, and attorneys' fees as provided by 42 U.S.C. § 1988.

# COUNT IV

## Violation of the Free Speech Clause of the U.S. Constitution

60. Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs, as if fully set forth herein.

61. The First Amendment—as incorporated and applied to the states through the Fourteenth Amendment—provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I.

62. Section 36-3-301, as amended by 2019 Public Chapter 415, is a content-based restriction on speech because it restricts speech facilitating ordination of ministers. The statute's exclusion of ministers who receive "online ordinations" from the privilege of solemnizing marriages cannot be justified without reference to the content of the speech between ULC Monastery and its ministers.

63. Section 36-3-301, as amended by 2019 Public Chapter 415, restricts the ability of ULC Monastery and its ministers to communicate via the Internet, which the Supreme Court has recognized as a "vast democratic forum" and the "most important place[] . . . for the exchange of views." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1736 (2017).

64. Section 36-3-301, as amended by 2019 Public Chapter 415, violates ULC Monastery's and its ministers' freedom of speech as prohibited by the First Amendment.

65. This violation of the Free Speech Clause to the U.S. Constitution is actionable as a violation of 42 U.S.C. § 1983, entitling Plaintiffs to declaratory and injunctive relief, as well as damages, costs, and attorneys' fees as provided by 42 U.S.C. § 1988.

# COUNT V

## Violation of Article 1, Section 3, of the Tennessee Constitution

66. Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs, as if fully set forth herein.

67. Article 1, Section 3, of the Tennessee Constitution states "[t]hat all men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience; that no man can of right be compelled to attend, erect, or support any place of worship, or to maintain any minister against his consent; that no human authority can, in any case whatever, control or interfere with the rights of conscience; and that no preference shall ever be given, by law, to any religious establishment or mode of worship."

68. Ordination of ministers is central to ULC Monastery's ministry and outreach, and Section 36-3-301, as amended by 2019 Public Chapter 415, burdens ULC Monastery's and its members' free exercise of religion by depriving them of the right to solemnize marriages. The restrictions imposed by Section 36-3-301, as amended by 2019 Public Chapter 415, on who may solemnize marriages are arbitrary and not supported by any rational basis.

69. Section 36-3-301, as amended by 2019 Public Chapter 415, is not neutral and not of general application because the statute's purpose is to confer a benefit on certain religious groups and not others. As a result, Section 36-3-301, as amended by 2019 Public Chapter 415, is subject to the most rigorous of scrutiny, and is not supported by any compelling governmental interest.

# COUNT VI

## Violation of Article 1, Section 19, of the Tennessee Constitution

70. Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs, as if fully set forth herein.

71. The Tennessee Constitution provides: "The free communication of thoughts and opinions, is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty." Tenn. Const. art. I, § 19.

72. "Article I, Section 19 of the Tennessee Constitution provides at least as much protection of the freedom[] of speech . . . as the First Amendment. *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 598 (6th Cir. 2013) (citing *Doe v. Doe,* 127 S.W.3d 728, 732 (Tenn. 2004)).

73. Section 36-3-301, as amended by 2019 Public Chapter 415, is a content-based restriction on speech because it restricts speech facilitating ordination of ministers. The statute's exclusion of ministers who receive "online ordinations" from the privilege of solemnizing marriages cannot be justified without reference to the content of the speech between ULC Monastery and its ministers.

74. Section 36-3-301, as amended by 2019 Public Chapter 415, restricts the ability of ULC Monastery and its ministers to communicate via the Internet, which the Supreme Court has recognized as a "vast democratic forum" and the "most important place[] . . . for the exchange of views." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1736 (2017).

75. Section 36-3-301, as amended by 2019 Public Chapter 415, violates ULC Monastery's and its ministers' freedom of speech as prohibited by the Article I, Section 19 of the Tennessee Constitution.

# COUNT VII

## Violation of Due Process Cause of the U.S. Constitution

76.     Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs, as if fully set forth herein.

77.     The Due Process Clause of the Fourteenth Amendment provides that states may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

78.     The Due Process Clause protects against arbitrary government conduct and prevents states from establishing an "irrefutable assumption" that "operates to deny a fair opportunity to rebut it." *Vlandis v. Kline*, 412 U.S. 441, 446 (1973).

79.     The Due Process Clause also requires that "regulated parties should know what is required of them so they may act accordingly." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

80.     Section 36-3-301, as amended by 2019 Public Chapter 415, impermissibly denies ULC Monastery ministers any fair opportunity to rebut the statute's presumption that ministers receiving "online ordinations" or otherwise not ordained in the statute's specified manner are not qualified to solemnize marriages in Tennessee.

81.     Section 36-3-301, as amended by 2019 Public Chapter 415, fails to inform regulated parties as to what is required of them through use of the undefined and vague terms "considered, deliberate, responsible act" and "online ordinations."

82.     This violation of the Due Process Clause to the U.S. Constitution is actionable as a violation of 42 U.S.C. § 1983, entitling Plaintiffs to declaratory and injunctive relief, as well as damages, costs, and attorneys' fees as provided by 42 U.S.C. § 1988.

## COUNT VIII

### Violation of Article VI of the U.S. Constitution

83. Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs, as if fully set forth herein.

84. Article VI of the U.S. Constitution provides that "no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States." U.S. Cons. art. VI, cl. 3.

85. Section 36-3-301, as amended by 2019 Public Chapter 415, creates a position of public trust in those who are authorized to solemnize marriages, but requires that those who solemnize marriages adhere to certain religious traditions and not others. The result is to impose an unconstitutional religious test on ULC Monastery ministers.

86. This violation of Article VI to the U.S. Constitution is actionable as a violation of 42 U.S.C. § 1983, entitling Plaintiffs to declaratory and injunctive relief, as well as damages, costs, and attorneys' fees as provided by 42 U.S.C. § 1988.

## COUNT IX

### Violation of Article 1, Section 4, of the Tennessee Constitution

87. Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs, as if fully set forth herein.

88. Article 1, Section 4 of the Tennessee Constitution provides that "no political or religious test, other than an oath to support the Constitution of the United States and of this State, shall ever be required as a qualification to any office or public trust under this State."

89. Section 36-3-301, as amended by 2019 Public Chapter 415, creates a position of public trust in those who are authorized to solemnize marriages, but requires that those who

16
Case 2:19-cv-00049   Document 1   Filed 06/21/19   Page 16 of 19 PageID #: 16

solemnize marriages adhere to certain religious traditions and not others. The result is to impose a religious test on ULC Monastery ministers in violation of the Tennessee Constitution.

## COUNT X

### Violation of the Unconstitutional Conditions Doctrine

90. Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs, as if fully set forth herein.

91. Under the unconstitutional conditions doctrine, "a state actor cannot constitutionally condition the receipt of a benefit . . . on an agreement to refrain from exercising one's constitutional rights." *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1077 (6th Cir. 1994).

92. Section 36-3-301, as amended by 2019 Public Chapter 415, grants the authority to solemnize marriages to a limited number of qualified individuals yet denies that authority to those who exercise their religion in a manner protected by the First Amendment but disapproved of by the State. Ministers of ULC Monastery and couples who wish to be married by ULC Monastery ministers must refrain from exercising their constitutional rights to obtain the benefit of authorization to solemnize marriages.

93. This violation of unconstitutional conditions doctrine is actionable as a violation of 42 U.S.C. § 1983, entitling Plaintiffs to declaratory and injunctive relief, as well as damages, costs, and attorneys' fees as provided by 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

ULC Monastery respectfully requests that the Court grant the following relief:

a. A judgment declaring that Section 36-3-301, as amended by 2019 Public Chapter 415, is unconstitutional under the U.S. and Tennessee Constitutions, facially and as-applied to ULC Monastery;

b. A temporary restraining order, later to be made a permanent injunction, prohibiting Defendants from enforcing the ordination requirements of Section 36-3-301, as amended by 2019 Public Chapter 415, to the extent those requirements prevent ULC Monastery ministers from solemnizing marriages in Tennessee or invalidate marriages solemnized by ULC Monastery ministers in Tennessee;

c. A judgment awarding ULC Monastery its costs and attorneys' fees; and

d. Such other relief as the Court deems just and proper.

Respectfully submitted,

**ADAMS AND REESE LLP**

By: */s/ Rocklan W. King III*
**Rocklan W. King III** (BPR No 030643)
424 Church Street, Suite 2700
Nashville, TN 37219
Phone: (615) 259-1450
Fax: (615) 259-1470
rocky.king@arlaw.com

**Lucian T. Pera** (BPR No. 11641)
Crescent Center
6075 Poplar Avenue, Suite 700
Memphis, TN 38119
Phone: (901) 524-5278
Fax: (901) 524-5378
lucian.pera@arlaw.com


**DAVIS WRIGHT TREMAINE LLP**

**Bruce E.H. Johnson** (*pro hac vice pending*)
  (WSBA No. 7667)
**Ambika K. Doran** (*pro hac vice pending*)
  (WSBA No. 38237)
**Robert E. Miller** (*pro hac vice pending*)
  (WSBA No. 46507)
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Phone: (206) 622-3150
Fax: (206) 757-7700
brucejohnson@dwt.com
ambikadoran@dwt.com
robertmiller@dwt.com

*Attorneys for Plaintiffs*