IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEAST DIVISION

| | |
|---|---|
| UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE, a Washington non-profit corporation; ERIN PATTERSON, an individual; GABRIEL BISER, an individual; and JAMES WELCH, and individual,<br><br>**Plaintiffs**,<br><br>v.<br><br>WAYNE NABORS, in his official capacity as County Clerk of Putnam County, Tennessee; LISA DUKE CROWELL, in her official capacity as County Clerk of Rutherford County, Tennessee; WILLIAM K. KNOWLES, in his official capacity as County Clerk of Hamilton County, Tennessee; ELAINE ANDERSON, in her official capacity as County Clerk of Williamson County, Tennessee; and HERBERT H. SLATERY III, in his official capacity as Attorney General of the State of Tennessee,<br><br>**Defendants**. | Case No. 2:19-cv-00049<br><br>Judge Crenshaw<br><br>Magistrate Judge Newbern |

**REPLY BRIEF IN SUPPORT OF MOTION OF PLAINTIFFS UNIVERSAL LIFE
CHURCH MONASTERY STOREHOUSE, ERIN PATTERSON, GABRIEL BISER, AND
JAMES WELCH FOR TEMPORARY RESTRAINING ORDER
TO ENJOIN ENFORCEMENT
OF TENNESSEE STATUTE 36-3-301, AS AMENDED BY
TENNESSEE 2019 PUBLIC CHAPTER 415**

# TABLE OF CONTENTS

A. Plaintiffs Have Standing to Bring Their Claims. ....................................................... 1

B. Plaintiffs' Claims Are Ripe and Timely. ................................................................... 5

C. The Act Is Unconstitutional. ...................................................................................... 6

    1. The Act is subject to strict scrutiny............................................................7

    2. The Act fails any form of constitutional scrutiny. .....................................9

The State's Opposition does not explain why the Act's differential treatment of ministers ordained online has any basis—rational or not—other than religious animus. *See* Opp. at 6 (arguing, without reasoning, the statute "easily" satisfies rational basis review). Instead, the State asserts Public Chapter 415 "does not alter the status quo"—meaning, in its view, Plaintiffs lack standing (because an order would not redress their injuries); their claims are not ripe (because the law has not yet been used); the claims are time-barred (because they challenge, in part, 1998 statutory language that Public Chapter 415 "clarified"); and the balance of equities favor the State (because Plaintiffs will suffer no harm under the "status quo"). This theory would require the Court to find the General Assembly drafted and passed a law with no practical effect, and to believe the State opposes enjoining a law that merely keeps the status quo.

The Court should reject this contorted view of the law: As the record demonstrates, the General Assembly passed Public Chapter 415 for a simple reason: to declare, once and for all, that ministers ordained online, such as those ordained by Plaintiff ULC Monastery, may not solemnize marriages in Tennessee. Because the State offers no justification for this result, the Court should temporarily enjoin the Act, as well as the language it purportedly clarifies.

### A. Plaintiffs Have Standing to Bring Their Claims.

The State claims that Plaintiffs lack standing to bring their claims—on the grounds that Plaintiffs have suffered no cognizable injury, that injury would not be redressed by the relief sought, and Plaintiffs have failed to show a credible threat of enforcement. Each of these fails.

First, Plaintiffs have shown a cognizable injury. They have suffered injury under the Establishment Clause because "[t]he effect of the new law is to publically deem ULC Monastery an invalid or subordinate religious organization." Freeman Decl. [Dkt. 40] ¶ 14; *see Dumont v. Lyon*, 341 F. Supp. 3d 706, 721 (E.D. Mich. 2018) ("Feelings of marginalization and exclusion are cognizable forms of injury, particularly in the Establishment Clause context"; same-sex

1

couples had standing to challenge state contracts with faith-based adoption agencies); *see also Washegesic v. Bloomingdale Pub. Sch.*, 33 F.3d 679, 682 (6th Cir. 1994) ("use of governmental authority to encourage a sectarian religious view is a sufficient injury if directed toward the plaintiff"; student had standing to challenge school display of portrait of Jesus Christ). Plaintiffs have also alleged injury under the Free Exercise Clause: The Act "burden[s] [their] religious beliefs by pressuring them to alter personalized conduct in which they regularly engage," i.e., to turn away couples to whom they would otherwise minister. *New Doe Child #1 v. Cong. of United States*, 891 F.3d 578, 585 (6th Cir. 2018). Finally, Plaintiffs have established injury under the Free Speech Clause because they claim "an interest in engaging in protected speech that … violates" the Act—online ordination. *See Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court*, 769 F.3d 447, 451–52 (6th Cir. 2014).

The State argues Plaintiffs are not injured because a minister ordained online may perform a wedding so long as the couple later has their marriage "solemnized … by a clerk." Opp. at 7. This merely "restates the discrimination" Plaintiffs will suffer. *Ctr. for Inquiry, Inc. v. Marion Circuit Court Clerk*, 758 F.3d 869, 873 (7th Cir. 2014). While clergy of other religions "can solemnize their marriage in public ceremonies conducted by people who share their fundamental beliefs," ULC Monastery ministers cannot: Their "ability to carry out a sham ceremony, with the real business done in a back office, does not address the[ir] injury." *Id.*

The State also claims there is no constitutional right to perform marriages. Even if true, that is irrelevant: Where, as here, the state confers a right on clergy of one religion to the exclusion of clergy of another, it has unconstitutionally discriminated. The cases the State cites are inapposite. For example, *Jones v. Bradley*, 590 F.2d 294, 296 (9th Cir. 1979), rejected an

2

Case 2:19-cv-00049   Document 46   Filed 07/02/19   Page 4 of 14 PageID #: 292

inmate's claim that he was refused "permission to perform marriages" because the ceremonies conflicted with the need to "ensure discipline and good order in the prison."[1]

Plaintiffs have also demonstrated redressability. The State argues ULC Monastery ministers already lack the authority to solemnize marriages because online ordination is not a "considered, deliberate, and responsible" act. Opp. at 8. This relies on the fiction that Public Chapter 415 has no effect, a position that would render it superfluous and violates a "cardinal principle of statutory interpretation." *United States v. Malone*, 889 F.3d 310, 312 (6th Cir. 2018) (courts should not construe statutory text to be "superfluous, void, or insignificant"), *cert. denied*, 139 S. Ct. 1323 (2019). Moreover, ULC Monastery ordinations *are* "considered, deliberate, [or] responsible" acts, as they "signif[y] a commitment among the minister, the ULC Monastery, and other adherents that the minister upholds ULC Monastery's core tenets." Freeman Decl. [Dkt. 40] ¶ 12. Finally, that the law was at best ambiguous is demonstrated by the fact ULC Monastery ministers, including Plaintiffs, have continued to solemnize marriages, and the General Assembly itself believed the validity of such marriages was "not clear under the eyes of the law."[2] *See* Patterson Decl. [Dkt. 13] ¶ 5; Biser Decl. [Dkt. 14] ¶ 4; Welch Decl. [Dkt. 15] ¶ 5. The Attorney General's opinions, on which the State relies, are not binding. *Washington Cty. Bd. of Educ. v. MarketAmerica, Inc.*, 693 S.W.2d 344, 348 (Tenn. 1985).

Finally, Plaintiffs have satisfied the "credible threat of enforcement" requirement. Such a requirement does not exist in the Establishment Clause context, where a plaintiff must simply show he is "directly affected by the laws and practices against which [his] complaints are

---

[1] ULC Monastery, incorporated in 2006 and based in Seattle, is a separate entity with separate practices from the California entity in the cases the State cites.
[2] *An Act to amend Tennessee Code Annotated, Section 36-3-301*, relative to persons who may solemnize marriages: April 4, 2019 House Floor Session, 2019 Leg., 111th Sess., (Tenn. 2019) (statement of Rep. Michael G. Curcio), video available at: http://tnga.granicus.com/MediaPlayer.php?view_id=414&clip_id=17075, statement appearing at 1:45:19-1:47:16 (video included as Miller Decl. Ex. E).

directed." *Trump v. Hawaii*, 138 S. Ct. 2392, 2416, 201 L. Ed. 2d 775 (2018). Further, a plaintiff satisfies the "credible threat" standard "when he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Kiser v. Reitz*, 765 F.3d 601, 608 (6th Cir. 2014). The individual plaintiffs have been ordained online and intend to solemnize marriages—one as soon as July 6. Patterson Decl. ¶ 7; Biser Decl. ¶¶ 6-7; Welch Decl. ¶¶ 8-9. This conduct is proscribed by Public Chapter 415.

The State does not dispute this, does not claim that it will not enforce this law, and instead asserts that the laws Plaintiffs cited do not provide the means for enforcement. That the State refuses to disavow its intent to enforce the statute alone renders the threat of enforcement "especially substantial." *Kiser*, 765 F.3d at 609. Further, the State offers no reason the laws Plaintiffs cite do not apply. Tennessee law requires a minister to attest he has solemnized a marriage. Tenn. Code Ann. § 36-3-304. Under the Act, if a minister ordained online does so, he could be deemed to have "[k]nowingly ma[de] a false entry in … a governmental record." Tenn. Code. Ann. § 39-16-504(a)(1). The State's only response is that this statute was "intended" to address obstruction of justice and tampering with evidence. But the language is not so limited, nor has the government so limited its use of the law. *See, e.g., Jefferson Cty. v. Smith*, No. E2009-02674-COA-R3CV, 2011 WL 3062010, at *1 (Tenn. Ct. App. July 26, 2011) (invoking statute to procure return of an historic artifact, Davy Crockett's unexecuted marriage license).[3]

Finally, even if the State claims that it has no way to enforce the solemnization prohibition, Plaintiffs will still suffer an injury: Ministers who perform marriages risk that those

---

[3] The State cites a 1990 Attorney General opinion to claim the "false entry" statute does not apply to minister attestations; but that opinion relates only to a minister's "failure to return a license which he or she was never provided by the parties." Tenn. Op. Att'y Gen. No. 90-49 (Apr. 9, 1990) (emphasis added).

4

marriages will be invalidated.  In arguing otherwise, the State insists that Plaintiffs must remain in permanent limbo with no ability to seek legal redress for their injuries.

>    B.    **Plaintiffs' Claims Are Ripe and Timely.**

The State claims Plaintiffs' claims are ripe and time-barred.  Setting aside the inherent conflict between these arguments, neither is persuasive here.

A claim is ripe if it is "fit for judicial decision" and "withholding court consideration" will cause the parties hardship.  *Hill v. Snyder*, 878 F.3d 193, 213 (6th Cir. 2017) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).  Claims are fit for review if they present "purely legal" issues that "will not be clarified by further factual development."  *Id.* at 213-14 (citations omitted).  Thus, pre-enforcement facial constitutional challenges, like Plaintiffs' challenge here, are ripe for review.  *See id.*; *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 399 (6th Cir. 2001) (plaintiffs could challenge ordinance's "judicial review provisions" even before seeking the permits that were the subject of the ordinance); *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 290–91 (6th Cir. 1997) (facial challenges to a statute on Commerce Clause and Equal Protection grounds were fit for review because court could resolve them by looking to the statutory text and precedent).

The State responds that clerks will follow ministerial requirements to issue a marriage license even to ministers ordained online, but ignores that some Tennessee clerks have already flouted those requirements by refusing marriage licenses for ceremonies performed by ULC Monastery ministers.  *See* Welch Decl. ¶ 6; Freeman Decl. ¶ 12.  The State also claims the law is too vague to evaluate, yet it is the law's vagueness itself that has harmed Plaintiffs.

Even if the State is right, the Act will still cause immeasurable hardship. The fact that a clerk accepts a marriage license does not prevent the State or private litigants from later challenging its validity.  Ministers will suffer immediate harm because they will not be able to

perform legally recognized marriages, while ministers of other religions may. ULC Monastery ministers are already facing hardship, as the effective date of the law has forced them to cancel wedding ceremonies. *See* Patterson Decl. ¶ 6; Biser Decl. ¶ 6; Welch Decl. ¶ 7.

Finally, Plaintiffs' claims are not time-barred. The State cannot possibly claim Plaintiffs have failed to timely challenge Public Chapter 415—which has not even taken effect. *See Cooey v. Strickland*, 604 F.3d 939, 942 (6th Cir. 2010) ("Given the change of policy, the statute of limitations to challenge the new procedure began to run anew."). Nor is Plaintiffs' challenge to the "considered, deliberate, and responsible act" requirement barred, as Public Chapter 415 now makes clear that language is meant to discriminate against ULC Monastery ministers. In any event, the time to bring those claims has been tolled. "[T]here are important policy reasons not to require that a discrimination suit be filed at the first instance of discrimination or not at all. To do so, would frustrate the broad remedial purposes of civil rights laws which encourage the eradication of discrimination." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 511 (6th Cir. 1991). The State *admits* it has a "longstanding" policy of discriminating against ULC Monastery ministers. Claims based on such a policy are timely where, as here, any act occurred within the statutory period. *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003); *see also Nat'l Parks Conservation Ass'n, Inc. v. Tennessee Valley Authority*, 480 F.3d 410, 416 (6th Cir. 2007) (collecting cases "appl[ying] the continuing-violation theory to claims for deprivations of civil rights").

### C. The Act Is Unconstitutional.

The State argues at length that the Act is not subject to strict scrutiny. It is. Equally important, the State offers no justification for the Act—so even if a lesser form of scrutiny applied, a temporary restraining order would still be proper.

6

Case 2:19-cv-00049   Document 46   Filed 07/02/19   Page 8 of 14 PageID #: 296

### 1. The Act is subject to strict scrutiny.

Plaintiffs have asserted claims under the Establishment, Free Exercise, and Free Speech Clauses of the Constitution. Under all these doctrines, the statute is subject to strict scrutiny.

First, the statute is subject to strict scrutiny under the Establishment Clause. The State claims the law is not "facially discriminatory." Resp. at 14. It is: Public Chapter 415 prohibits those "receiving online ordinations" from solemnizing marriages. The effect, as the General Assembly intended, is to prevent ministers of churches such as ULC Monastery from performing valid marriages, while extending that privilege to ministers of other religions. *See* Miller Decl. Ex. D. The law is also discriminatory because it extends a benefit to minsters of religions with "customs" that provide for ordination by "considered, deliberate, and responsible act," while denying that benefit to ministers of other religions, such as Islam. This preference, too, appears on the face of the law. *See Larson v. Valente*, 456 U.S. 228, 253 (1982) (law conferring a benefit "on some religious organizations but not others" is subject to strict scrutiny); *Wilson v. N.L.R.B.*, 920 F.2d 1282, 1287 (6th Cir. 1990) (law "creates a denominational preference by conferring a benefit on members of the religious organizations described in the statute").[4]

The State claims strict scrutiny does not apply because Public Chapter 415 distinguishes between "individuals, not religions." Opp. at 16. But targeting individuals who embrace certain religious practices is no more permissible than targeting a religion by name. Otherwise, the legislature could always discriminate on the basis of religion by prohibiting clergy from performing a practice affiliated with one religion. "Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993).

---

[4] The State claims that Plaintiffs did not argue that the statute fails to satisfy the standard in *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971). They did. *See* Mem. at 13 n.4 (arguing that the law has no secular purpose).

To justify the "considered, deliberate, and responsible act" requirement, the State effectively admits it disapproves of how ULC Monastery chooses its ministers. *See* Opp. at 18 (arguing the statute "ensures that the title of minister, elder, or spiritual leader is not conferred without thought and consideration."); *id.* at 19 (the law "require[s] that a minister or spiritual leader of whatever religion be officially designated in a meaningful, non-perfunctory way"). But the State "must recognize as clergy those persons designated by the faith itself." *Ctr. For Inquiry, Inc.*, 758 F.3d at 874 (citing *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171 (2012)). The State has no right to pass judgment on whether ULC Monastery's "customs" are sufficiently "meaningful" or involve the requisite "consideration."

The statute is also subject to strict scrutiny under the Free Exercise Clause. The State claims the Act does not "affect ULC's ability to ordain whomever it chooses," but rather "who is authorized to solemnize marriages in Tennessee." Resp. at 20. But "the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege." *Sherbert v. Verner*, 374 U.S. 398, 405 (1963). The State also argues it may target online ordination because such ordination is not part of the Church's sincerely held religious beliefs. *See* Resp. at 21. But it is. Freeman Decl. ¶ 6. By targeting only ULC Monastery's chosen method of ordination—and not methods the State acknowledges are comparable, such as fax or mail—the "design of [this] law[] accomplishes . . . a 'religious gerrymander,' . . . [which is] an impermissible attempt to target [Plaintiffs]." *Church of the Lukumi*, 508 U.S. at 535.

Finally, the Act is subject to strict scrutiny under the Free Speech Clause. The State again argues that the Act does not violate the Church's rights because it does not outright prevent online ordinations. Resp. at 22. But in this context, too, the Supreme Court has made clear that "[t]o deny [a benefit] to claimants who engage in certain forms of speech is in effect to penalize them for such speech." *Speiser v. Randall*, 357 U.S. 513, 518 (1958). Further, the ordinations

8
Case 2:19-cv-00049 Document 46 Filed 07/02/19 Page 10 of 14 PageID #: 298

are not, as the State claims, unexpressive "conduct." "Religious groups are the archetype of associations formed for *expressive* purposes . . . ." *Hosanna-Tabor*, 565 U.S. at 200 (emphasis added). Ordination is inherently expressive because it reflects a religious group's expression, to its members and the world, that it has accepted and approved of the person seeking ordination as a fit and proper representative of the religious group's values and beliefs. The case on which the State relies, *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47 (2006), holds that denying federal funding to schools that prohibit military representatives campus access for recruiting does not regulate expressive conduct. That is nothing like the expression here.

### 2. The Act fails any form of constitutional scrutiny.

The State does not argue that the Act survives strict scrutiny (because it does not). The Court's inquiry should stop there. But even under a lesser standard, the Act fails because it is arbitrary, overbroad, underinclusive, and vague. Mem. at 19. Rational basis review "is not a rubber stamp of all legislative action." *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000). A state "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 446 (1985). Likewise, in the free speech context, even content-neutral restrictions must be "narrowly tailored to serve a significant government interest." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). The State cannot satisfy these standards.

The State offers *no* justification for the Act. Although it refers generally to "ensur[ing]" ordination involves "thought" and "consideration," Resp. at 18, it identifies no governmental purpose in ensuring such a result. *See* Resp. at 18. Further, the State does not dispute that the statute is both overinclusive—extending to marriages performed by Muslim imams—and underinclusive—as ministers "ordained by mail would not be affected by Chapter 415." Resp. at 16. *Universal Life Church v. Utah*, 189 F. Supp. 2d 1302, 1317 (D. Utah 2002), *supports*

9

Plaintiffs. There, the Court stated: "If the Legislature was concerned with the casual and effortless manner in which an individual is able to become a ULC minister, there is no rational basis for the differential treatment between (1) ministers who applied via the Internet and mail, and (2) those who applied via fax, telephone, or in person." So, too, here.

Finally, the State effectively concedes the Act's vagueness. The State admits "online ordination" has no "readily apparent meaning," and Public Chapter 415's "scope and application, if any, cannot be established with any certainty." Resp. at 12. This vagueness has given ULC Monastery's ministers no choice but to cancel upcoming weddings. *See* Patterson Decl. ¶ 6; Biser Decl. ¶ 6; Welch Decl. ¶ 7. "Without clear standards guiding the discretion of public officials with enforcement authority, there is a risk that those officials will administer the policy based on impermissible factors." *Miller v. City of Cincinnati*, 622 F.3d 524, 539 (6th Cir. 2010) (internal quotation marks omitted). The Act provides no such standards.[5]

For these reasons, Plaintiffs respectfully ask the Court to grant their motion.

---

[5] The State's arguments regarding the remaining factors rests solely on its claim that the statute does not alter the status quo. Because it does, these factors favor an injunction.

Respectfully submitted,

**ADAMS AND REESE LLP**

By: */s/ Rocklan W. King III*
**Rocklan W. King III** (BPR No 030643)
424 Church Street, Suite 2700
Nashville, TN 37219
Phone: (615) 259-1450
Fax: (615) 259-1470
rocky.king@arlaw.com

**Lucian T. Pera** (BPR No. 11641)
Crescent Center
6075 Poplar Avenue, Suite 700
Memphis, TN 38119
Phone: (901) 524-5278
Fax: (901) 524-5378
lucian.pera@arlaw.com


**DAVIS WRIGHT TREMAINE LLP**

**Bruce E.H. Johnson** (*pro hac vice*)
 (WSBA No. 7667)
**Ambika K. Doran** (*pro hac vice*)
 (WSBA No. 38237)
**Robert E. Miller** (*pro hac vice*)
 (WSBA No. 46507)
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Phone: (206) 622-3150
Fax: (206) 757-7700
brucejohnson@dwt.com
ambikadoran@dwt.com
robertmiller@dwt.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 2nd day of July, 2019, the foregoing was electronically filed utilizing the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by U.S. Mail, postage prepaid, or process server. Parties may access this filing through the Court's electronic filing system.

> Lisa M. Carson
> Buerger, Moseley & Carson, PLC
> 306 Public Square
> Franklin, TN 37064
> Email: lcarson@beurgerlaw.com
> *Attorney for Elaine Anderson, in her capacity as*
> *County Clerk of Williamson Co., TN*
>
> Mary Neill Southerland
> Assistant Hamilton County Attorney
> Hamilton County Attorney's Office
> 625 Georgia Avenue
> Chattanooga, TN 37402
> Email: neills@hamiltontn.gov
> *Attorney for William K. Knowles, in his capacity as*
> *County Clerk of Hamilton Co., TN*
>
> Jeffery G. Jones
> County Attorney for Putnam County, Tennessee
> 1420 Neal Street
> Cookeville, TN 38501
> Email: jjones@wimberlylawson.com
>
> Nicholas Christiansen
> County Attorney for Rutherford County, Tennessee
> 16 Public Square North
> Murfreesboro, TN 37133
> Email: nchristiansen@mborolaw.com
>
> Leslie Ann Bridges
> Attorney General of the State of Tennessee
> 301 6th Avenue North
> Nashville, TN 37243
> Email: Leslie.Bridges@ag.tn.gov

> */s/ Rocklan W. King III*
> Rocklan W. King III