# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE, ET AL. Plaintiffs, | ) ) ) ) |
| v. | ) No.: 2:19-cv-00049 ) |
| WAYNE NABORS, ET AL. Defendants. | ) ) ) ) |

## ORDER

Pending before the Court are virtually identical Motions to Continue Trial filed by Williamson County Clerk Elaine Anderson (Doc. No. 161); Putnam County Clerk Wayne Nabors (Doc. No. 163); Rutherford County Clerk Lisa Crowell (Doc. No. 165); and Hamilton County Clerk William Knowles (Doc. No. 169). In each, the Clerk asks that the Court postpone the trial on the merits long scheduled by the agreement of the parties, including the Attorney General, for December 19, 2019 regarding language added to Tennessee Code Annotated § 36-3-301 that prohibits "[p]ersons receiving online ordinations" from "solemniz[ing] the rite of matrimony" in Tennessee. The Clerks make their request because the state Defendants – Governor Bill Lee, Attorney General Herbert Slatery, and four District Attorneys General – have evidenced their intention not to participate in the trial and have filed a Notice of Appeal (Doc. No. 141) in which they assert that the Court's October 23, 2019 Order effectively denied their claim of immunity from suit.

As a preliminary matter, the Court agrees with the Clerks' assertion that "if the State Defendants' current appeal is properly characterized as an appeal related to sovereign immunity, this Court is likely divested of jurisdiction to proceed to the trial on the merits until that appeal is resolved." (Doc. No. 166 at 5). However, implicit in that characterization is that the Court denied,

"effectively" or otherwise, the state Defendants qualified immunity. The Court did no such thing. All the Court did was deny a request for an extension of time within which to file pretrial briefs in accordance with a Revised Scheduling Order that the state Defendants agreed to. This, of course, would have required the state Defendants to file their trial briefs at the same time as the other parties. It is more than a tad ironic for the state Defendants to suggest that the filing of their brief would have caused them to expend time and money in violation of their claimed immunity, when they were the ones who "took the lead in questioning" (Doc. No. 133 at 6) the five individual Plaintiffs at their depositions, none of whom could offer anything on the legal issue of whether sovereign immunity applied.

A lot more could be said about the state Defendants' tactics in this case that, while cathartic, would not address the present request for a continuance. Based in no small part on the actions taken by the state Defendants, the Clerks find themselves in the awkward position of attempting to defend a statute in which they had no hand in drafting, modifying, or enacting. Indeed, each of the Clerks have specifically stated that they take no position on the constitutionality of the statute in question, and the Clerk of Hamilton County has gone so far as to say he does not "object[] to the relief sought by Plaintiffs, with the exception of Plaintiffs' request for recovery of costs and attorney's fees against him." (Doc. No. 156 at 1-2).

Nor does it fall upon the Clerks to enforce the statute as written. Instead, as explained further below, defending the statute falls on the Attorney General who, rightly or wrongly, has chosen to invoke sovereign immunity even though "a State may waive its sovereign immunity by consenting to suit." Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999) (citing Clark v. Barnard, 108 U.S. 436, 447–448 (1883)). The appeal was taken

2

under the guise that this Court refused to address the sovereign immunity defense, even though the motion making that request had been fully-briefed only nine days before the state Defendant filed their Notice of Appeal.

Of course, "[t]he filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" Williamson v. Recovery Ltd. P'ship, 731 F.3d 608, 626 (6th Cir.2013) (quoting Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982)). A district court is not, however, completely without power to proceed in a case upon the filing of a notice of appeal. "[I]t retains jurisdiction to enforce its judgment, to proceed with matters that will aid the appellate process, and to adjudicate matters unrelated to the issues on appeal." Id. (citing City of Cookeville v. Upper Cumberland Elec. Membership Corp., 484 F.3d 380, 394 (6th Cir.2007)). The only possible basis for retaining jurisdiction is the last one listed. Contrary to the Attorney General's November 12, 2019 letter, there is no judgment, final or otherwise, to enforce. Nor would a conclusion about the constitutionality of the revised statute aid the appellate court in determining whether the Court abused its discretion in requiring adherence to Rule 16 of the Federal Rules of Civil Procedure, and compliance with a scheduling order that was revised at the request of the parties, including the Attorney General.

To be sure, the constitutionality of the prohibition against online ordinated clergy performing marriages in Tennessee is distinct from the issue of whether the Court erred in denying a request for an extension of time to file trial briefs by the Governor, the Attorney General, and the District Attorneys General for Rutherford, Hamilton, Putnam and Williamson Counties. However, "Tennessee law 'requir[es] the Attorney General to be a party defendant in any proceeding where

3

the constitutionality of the Act of the legislature is before the Court on declaratory judgments proceeding.'" Burns v. Helper, No. 3:18-CV-01231, 2019 WL 5964546 (M.D. Tenn. Nov. 13, 2019) (quoting Cummings v. Beeler, 223 S.W.2d 913, 916 (Tenn. 1949)). As the Sixth Circuit has recently explained in detail:

> The Tennessee Attorney General is "the chief executive officer of the Legal Department of state government." The Attorney General is a constitutional officer appointed by the justices of the Tennessee Supreme Court. This role carries "extensive statutory power and the broad common-law powers of the office except where these powers have been limited by statute." Tennessee courts have given a broad construction to the Attorney General's statutory authority. They also are reluctant to authorize interference with the Attorney General's obligations.
>
> Tennessee law provides that the Attorney General has the duty to try or direct "all civil litigated matters and administrative proceedings in which the state or any officer, department, agency, board, commission or instrumentality of the state may be interested[.]" The Attorney General has the exclusive authority "to attend to all business of the state" in both criminal and civil matters in Tennessee's appellate courts. The Attorney General's exclusive authority also extends to cases in federal court.
>
>> The attorney general and reporter shall attend in person, or by assistant, and prosecute or defend, as the case may be, any and all suits, civil or criminal in the [S]upreme [C]ourt of the United States, in the United States court of appeals for the judicial circuit of the United States comprising the state of Tennessee, or in any of the district courts of the United States held in the state of Tennessee, in which suit or suits the state may be a party, or in which the state has or may have interests of a pecuniary nature.

State by and through Tenn. Atty. Gen'l v. U.S. Dept. of State, 931 F.3d 499, 515-16 (6th Cir. 2019) (internal citations omitted). In short, "Tennessee has selected the Attorney General as the exclusive representative of its interests in federal court." Id. at 516.

Such is the case here. While Plaintiffs argue that Tennessee law only requires that the Attorney General receive notice of the suit and that has been accomplished, the Attorney General was not only named a party, he has been represented by counsel, and he has taken the position that

4

"the challenged provisions easily survive the deferential rational basis review that applies and stands ready to defend the constitutionality of the challenged provision on the merits." (Doc. No. 157 at 6). Why rational basis as opposed to strict scrutiny applies has yet to be explained, and the rationale underlying the statute, whatever it may be, has yet to be articulated. Presumably the trial brief, which the Attorney General now asks the Sixth Circuit for more time to file, would have answered those questions. Instead, the Clerk Defendants – the only remaining Defendants in this action – face the unenviable task of addressing these matters at trial, assuming they know the answers. This would be fundamentally unfair to them and could arguably result in nothing more than a Pyrrhic victory for the Plaintiffs. Better that the case be decided with input from all of the concerned parties and resolved in one setting.

"It is apodictic that federal courts possess the inherent power to stay proceedings for prudential reasons." Microfinancial, Inc. v. Premier Holidays Int'l, Inc., 385 F.3d 72, 77 (1st Cir. 2004). This includes the "inherent power to exercise its discretion to stay proceedings to avoid unnecessary litigation of the same issues." Munson v. Butler, 776 F. App'x 339, 342 (7th Cir. 2019) As Justice Cardozo explained long ago:

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. True, the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.

Landis v. N. Am. Co., 299 U.S. 248, 254–55 (1936).

Upon full consideration of the competing interests, the Court finds a temporary stay of the proceedings to be appropriate, if not absolutely necessary. In doing so, the Court recognizes

5

Plaintiffs' position that "every day the Act remains in effect, any marriage solemnized by a Universal Life Church Minister after July 2, 2019, may one day be declared invalid." (Doc. No. 167 at 2). This is indeed significant because "[t]he Supreme Court has also made clear that a violation of First Amendment rights, even for a short time, causes irreparable harm." Baker v. Adams Cty./Ohio Valley Sch. Bd., 310 F.3d 927, 930 (6th Cir. 2002) (citing Elrod v. Burns, 427 U.S. 347, 373 (1976)). On the other hand, "[a] state's right to participate in federal litigation implicating its interests as a sovereign is a serious matter." Lopez-Aguilar v. Marion Cty. Sheriff's Dep't, 924 F.3d 375, 391 (7th Cir. 2019). It is an even more serious matter when a duly enacted statute is attacked on constitutional grounds. Deciding the constitutionality of the newly-added language in the statute at a trial where no one, even the Attorney General, appears to defend it would be a disservice not only to the parties, but also the citizens of Tennessee.

Accordingly, this case is hereby **STAYED** pending resolution of the state Defendants' appeal. As a consequence, the pretrial conference scheduled for 9:00 a.m. on December 9, 2019, and the bench trial scheduled for December 19, 2019 are hereby **CANCELLED**, to be reset as soon as possible after the Sixth Circuit issues a ruling.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

6